NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

ELIZABETH E. CAREY, PETITIONER, v. PUBLIC SERVICE GAS AND ELECTRIC COMPANY, RESPONDENT.

For the petitioner, *William C. French* and *Samuel T. French.*

For the respondent, *Henry J. Sorenson.*

\*     \*     \*     \*     \*     \*     \*

Attorneys having, prior to final hearing, stipulated in writing, signed by said attorneys, the date of which being March 29th, 1928, and which said stipulation having been read into the record and made a part thereof covers the following state of the case:

It is hereby agreed and stipulated between the various parties, William C. French, attorney for the petitioner, and James C. Boyd, attorney for the respondent, that Morton Carey on May 21st, 1926, was employed by the respondent, Public Service Electric and Gas Company, as a pipe fitter and on that date he was entering the premises of 139 Merion avenue, Haddonfield, for the purpose of delivering meter and materials.

As he was entering the premises, a small barrel fell or was thrown from the roof of a sunporch, which keg came in contact with the decedent's head. At the time of the impact, the decedent was carrying a bucket of fittings which he dropped at the time of the impact. He then picked up the fittings, with the assistance of the man who had either thrown or let the barrel fall and then proceeded into the house to go about his work. He continued working throughout the entire day and the following day, being a Saturday, he continued working until twelve o'clock. The decedent continued to work for the respondent up to and including May 29th, 1926."

It was also stipulated that decedent at the time he was injured was making the sum of $30 per week.

The stipulations and the petition and answer therefore disposed of all the material questions in the case with the exception of "the cause of the death of the decedent."

Petitioner testified that her husband, the decedent, had been in perfect health for a period of twenty years prior to the injury he received on the head by being struck by the object, that during that twenty years he had not been off from work on account of illness, such as colds, more than a week, that he had never consulted a doctor during that twenty years, that the afternoon of May 21st, 1926, when he came home from work, he looked different from the way he had looked when he was home for his noonday meal; he was a changed man, had a stary look, his eyes were glassy and he complained of terrible pains to his head, that he ate no supper, couldn't sleep, that petitioner applied hot cloths to a large lump, larger than a good-sized egg, on left side of head about two inches above left ear, that he got up the next morning and went

to work, didn't eat anything but a cup of coffee, worked the half day which was a Saturday, came home shortly after noon, and went to bed and stayed there until Monday when he again went to work still complaining. He walked the floor and would get up and lay down and said his head was paining him so he didn't know what to do. He was the same on Monday, Tuesday, Wednesday and Thursday, when he went to Dr. Bowker's. Petitioner kept the swelling on head covered with hot witch hazel all Saturday afternoon and night and all day Sunday and Monday morning until he left for work.

Decedent continued his work up until May 29th, 1926, when petitioner called in Dr. Bowker, who attended him until June 5th, 1926, decedent getting continually worse, when on June 5th, 1926, Dr. Bowker called in Dr. Thomas Kain in conference, and as a result of same decedent was removed to Cooper Hospital in the city of Camden, Camden county, New Jersey, where he gradually became worse, and finally on June 14th, 1926, decedent died, the last two or three days decedent's mind wandered and he became unmanageable, that the authorities at the hospital strapped him by the hands and feet, to his bed.

Petitioner further testified that decedent never had a conscious moment, after his injury, free from intense pain.

Leonard Carey, the twenty-year-old son of petitioner and decedent, corroborated the entire story of the petitioner.

Mrs. Ethel Durges, of 651 Washington street, Camden, a close friend of the family, testified that she saw decedent every day from the 22d or 23d of May, 1926, until he died, also corroborated petitioner's testimony.

Mrs. Mary Fisher, of 1406 Baird avenue, Camden, New Jersey, a sister of decedent, saw him every day from the day before he went to the hospital until the day he died, spending portions of days and nights with him, also corroborates petitioner.

They all testify as to the change in his personal appearance, his pain and agony, his inability to sleep and the loss of appetite and each one of the petitioner's witnesses testify to having seen the lump on decedent's head, and each one testified as to its location.

Dr. Thomas Kain, a witness produced by respondent, testified to having seen the lump on decedent's head at the time he examined him at his home in consultation with Dr. Bowker. None of this testimony was contradicted by the respondent.

Petitioner also produced Dr. Richard S. Davis, of Philadelphia, who testified as an expert, upon the history of the decedent's prior perfect health for the long period of twenty years and his record of continuous work during that period; decedent's injury on the head and the resultant effect on him to the time of his death, and after having examined the entire hospital record also the slides under the microscope taken of splashes of decedent's brain after the post mortem, that in his opinion, the head injury was the predisposing idiological factor in the man's death and that epidemic encephalitis, lethargic type, did not cause death.

For the purpose of denying this opinion and setting up a defense of the fractured skull theory, the respondent called upon Dr. Farley, Dr. Kain and Dr. Mahaffey, who, without considering the previous history of the good health and working record of decedent, gave as their opinion that decedent came to his death from "epidemic encephalitis, lethargic type."

All of the doctors called were experts, and Dr. Davis testified that "encephalitis, lethargica, is an acute inflammatory infection of the central nervous system." And from the standpoint of modern medicine this affection must be regarded as a new disease, and that partly due to the newness of the disease and very largely to its pecularities, it is very hard to diagnose.

The testimony of Dr. Davis seems to accord with the other doctors called by the respondent, in that they all admitted on cross-examination that this disease, "epidemic encephalitis lethargica," is very difficult to diagnose, in that its symptoms resembles so many other diseases. Dr. Mahaffey stated in his cross-examination that he had never seen the decedent during his lifetime and that all he knew was from the symptoms derived after death; that examinations before death

are of much more evidential value than examinations after death. Dr. Farley stated that there was nearly always a discoloration of the spinal fluid in encephalitis, yet the history in this case showed two tappings of the spine, one on the 5th and one on the 8th days of June, 1926, and in each instance 20 c.c. of spinal fluid was taken and on both occasions the fluid was clear, tending clearly to indicate that there was no involvement of the spine which is one of the principal parts that goes to make up the central nervous system.

Dr. Farley testified that in his post mortem he found calcification around the longitudinal sinus on the left side of skull, he also found calcification of chest cartilage and to his mind due to the same process, he afterward said that this calcification could be new bone substance or lime salts deposits, but in view of the fact that he mentions no other evidence of calcification ' (which might be either lime salts deposits or new bone substance) in any other part of the skull, and in view of the fact that this discovery of the calcification on the inside of the left side of the head either at the point or so near to the point where all of the petitioner's witnesses and Dr. Kain testified the lump was on decedent's head, I am constrained to believe that decedent died from the effects of the injury to the head.

I therefore find as a fact that decedent, Morton Carey, who was injured by accident on the 21st day of May, 1926, while in the employ of the respondent, Public Service Electric and Gas Company, and while performing work for the respondent in the course of his employment, and that as a consequence of such accident, arising out of and in the course of his employment, he suffered an injury to the head, and that same resulted in his death, in the Cooper Hospital in the city of Camden, New Jersey, on the 14th day of June, 1926.

\*　　\*　　\*　　\*　　\*　　\*　　\*

W. E. STUBBS,
*Deputy Commissioner.*